IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| HURT & PROFFITT, INC. | ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 7:22cv00564 |
| THE HANOVER INSURANCE COMPANY, | ) ) ) | |
| Serve:  CT Corporation<br>         4701 Cox Road, Suite 285<br>         Glen Allen, Virginia  23060 | ) ) ) ) ) | |
| and | ) ) | |
| CONTINENTAL CASUALTY COMPANY, | ) ) | |
| Serve:  CT Corporation<br>         4701 Cox Road, Suite 285<br>         Glen Allen, Virginia  23060 | ) ) ) ) ) | |
| and | ) ) | |
| TOWN OF PEARISBURG | ) ) | |
| Serve:  James A. Hartley<br>         Hartley and Needham, P.C.<br>         503 Mountain Lake Avenue<br>         Pearisburg, Virginia  24134 | ) ) ) ) ) ) | |
|     Defendants. | ) | |

**COMPLAINT**

Plaintiff Hurt & Proffitt, Inc. ("Hurt & Proffitt"), by counsel, hereby files this Complaint for breach of contract and for a declaration of the parties' rights and obligations arising under certain insurance contracts and states as follows:

## PARTIES

1. Plaintiff, Hurt & Proffitt is a corporation domiciled in Virginia with its principal place of business in Lynchburg, Virginia.

2. Defendant The Hanover Insurance Company ("Hanover") is an insurance company licensed to do business and doing business in Virginia. Hanover is domiciled in New Hampshire with its principal place of business in Worchester, Massachusetts.

3. Defendant Continental Casualty Company ("Continental") is an insurance company licensed to do business and doing business in Virginia. Continental is domiciled in Illinois with its principal place of business in Illinois.

4. Defendant Town of Pearisburg is a municipal corporation chartered under the laws of the Commonwealth of Virginia and located in Giles County, Virginia.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332.

6. An actual controversy exists between the parties hereto within the meaning of 28 U.S.C. § 2201, and this Court is, therefore, vested with the power to declare and adjudicate the rights and other legal relationships of the parties in this action with reference to the issues raised by this Complaint.

7. Plaintiff, Hurt & Proffitt, and Defendants Hanover and Continental are, for purposes of diversity jurisdiction, per 28 U.S.C. § 1332, citizens of different states: Virginia, New Hampshire and Massachusetts and Illinois. As outlined in Hurt & Proffitt's Motion to Realign Parties to be filed in this action, Defendant the Town of Pearisburg should be realigned as a plaintiff in this action either because its interests are aligned with Hurt and Proffitt with respect to the primary issue in the controversy or because it is a nominal party, which should be

realigned as a plaintiff for the purpose of defining the real controversy. Thus, this Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332, as the matter in controversy involves a dispute between citizens of different states and, based upon the potential pecuniary impact of the underlying litigation, the amount in controversy, exclusive of interests and costs, exceeds $75,000.

8. This Court has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) as the Defendants either reside in or conduct business in this state.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the Underlying Action is pending in Giles County, Virginia, which is located within this District and Division. In addition, the location of the events giving rise to this insurance coverage dispute took place within this District and Division.

## THE TOWN OF PEARISBURG'S CLAIM AND THE UNDERLYING ACTION

10. This action to determine insurance coverage arises from an underlying lawsuit styled *Town of Pearisburg v. Hurt & Profit, Inc.*, Case No. CL 22-389, filed on July 25, 2022 in the Circuit Court for Giles County, Virginia ("the Underlying Action"). A copy of the Underlying Action is attached as Exhibit A. In the Underlying Action the Town of Pearisburg alleges a breach of contract claim against Hurt & Proffitt arising out of its provision of engineering services in connection with a UV disinfection system project. The Underlying Action claims $1,337,900 in damages.

11. The Town of Pearisburg initially asserted its claim for professional negligence against Hurt & Proffitt by certified letter dated December 27, 2021 ("The Letter"). A copy of The Letter is attached hereto as Exhibit B. The Letter was addressed to Dennis Amos at Hurt & Proffitt's address in Blacksburg, Virginia and asserted a claim for $394,915.15 against H&P

related to a "UV disinfection project," claiming that the system "has never performed satisfactorily." The Town of Pearisburg sent The Letter to Mr. Amos by certified mail at H&P's Blacksburg, Virginia office.

12. The Letter was delivered to H&P's office on December 29, 2021 at 2:14 p.m. Christina Dudley, an administrative employee of H&P was sitting at the front desk that afternoon because the office was short staffed during the holiday week. Mr. Amos was on vacation and was not in the office on December 29, 2022. Ms. Dudley signed for The Letter. Ms. Dudley did not open The Letter as it was addressed to Mr. Amos. Instead, Ms. Dudley, placed the unopened letter on Mr. Amos' desk.

13. Upon Mr. Amos' return to the office on January 3, 2022, Mr. Amos opened The Letter and became aware of the claim being asserted by the Town of Pearisburg.

14. Mr. Amos immediately alerted H&P's leadership and on January 4, 2022 the claim was reported to Campbell Insurance, the insurance agency that procured the Hanover and Continental policies.

15. On or about July 29, 2022, H&P was served with a copy of the Underlying Action. By correspondence dated August 2, 2022, H&P tendered the Underlying Action to Hanover and Continental and requested a defense and indemnification for the claims alleged in the Underlying Action.

**THE COVERAGE DENIALS BY HANOVER AND CONTINENTAL**

16. By correspondence dated March 9, 2022 Hanover denied coverage for the claim asserted in The Letter. A copy of the March 9, 2022 correspondence is attached hereto as Exhibit C.

17. By correspondence dated August 8, 2022 Hanover reiterated its denial of coverage and refused to provide a defense to H&P in the Underlying Action. A copy of the August 8, 2022 correspondence is attached hereto as Exhibit D.

18. Hanover's denial of coverage ignores the terms of the Hanover Policy and its own failure to ever offer a renewal.

19. By correspondence dated May 20, 2022 Continental denied coverage for the claim asserted in The Letter. A copy of the May 20, 2022 correspondence is attached hereto as Exhibit E.

20. By correspondence dated August 25, 2022, Continental reiterated its denial of coverage and refused to provide a defense to H&P in the Underlying Action. A copy of the August 25, 2022 correspondence is attached hereto as Exhibit F.

## THE H&P PROFESSIONAL LIABILITY POLICIES

21. Hanover and Continental provided H&P's professional liability policies for the consecutive years 2021 (Hanover) and 2022 (Continental). H&P had maintained professional liability insurance (which had been provided on a claims made basis) continuously with no gaps in coverage since at least January 1, 2005.

22. The Hanover Insurance Company provided an Architects and Engineers Professional Liability Insurance Policy to named insured H&P under policy number LHR D465560 03 with effective dates from 01/01/2021 to 01/01/2022 ("the Hanover Policy"). The policy limits were $5,000,000 per claim and $6,000,000 in the aggregate. There was a $125,000 per claim deductible, and a $375,000 aggregate deductible. The retroactive date was 01/01/2005. H&P paid a premium of $249,878 for the Hanover Policy. A copy of the Hanover Policy is attached hereto as Exhibit G.

23. Continental Casualty Company provided an Architects and Engineers Professional Liability Insurance Policy to named insured H&P under policy number AEH591954284 with effective dates from 01/01/2022 to 01/01/2023 ("the Continental Policy"). The policy limits were $5,000,000 per claim and $5,000,000 in the aggregate. There was a $100,000 per claim deductible, and a $375,000 aggregate deductible. The retroactive date was 01/01/2005. H&P paid a premium of $202,850 for the Continental Policy. A copy of the Continental Policy is attached hereto as Exhibit H.

24. The Hanover Policy provides, in relevant part, as follows:

### ARCHITECTS AND ENGINEERS ADVANTAGE PROFESSIONAL LIABILITY INSURANCE POLICY

**This is a CLAIMS-MADE AND REPORTED policy. Subject to the terms, conditions, exclusions and limitations of this Policy, coverage is limited to liability for only those Claims that are first made against You and reported to Us in writing after the Retroactive Date and during the Policy Period or any applicable Extended Reporting Period.**

\* \* \*

**You have purchased Claims-Made liability insurance. When this insurance terminates, We will send an offer with available options for purchasing the supplemental Extended Reporting Period. You may receive information on claims under this Policy. If you have any questions regarding Claims-Made coverage or the importance of purchasing the supplemental Extended Reporting Period, please contact Us or Your insurance agent.**

**Please read this Policy carefully**

Throughout this **Policy**, the terms **We**, **Us** and **Our** refer to the **Company** [Hanover] providing this insurance. The terms **You** and **Your** refer to the persons and entities insured under this **Policy**.

In consideration of the premium charged, in reliance upon the statements in **Your** application and subject to the Declarations, limitations, conditions, definitions and other provisions of this **Policy**, including endorsements hereto, **We** agree with **You** as follows:

A.     COVERAGE – WHAT THIS POLICY INSURES

1. Professional Services Coverage

   **We** will pay on **Your** behalf those sums which **You** become legally obligated to pay as **Damages** and **Claim Expenses** in excess of the applicable deductible amount because of any **Claim** made against **You**, and reported to **Us** in writing during the **Policy Period**, or any **Extended Reporting Period**, if applicable, arising from a **Wrongful Act** in the rendering or failure to render **Your Professional Services**…

* * *

D.  **DEFINITIONS**

* * *

**Claim** means a written demand, **Suit** or request for a tolling agreement You receive alleging a **Wrongful Act(s)…** arising from **Your Professional Services** on or before the **Policy Termination Date**….

* * *

Under the Virginia State Amendatory Endorsement, the definition of **Damages** is deleted and replaced by:

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes pre-judgment interest.

**Damages** also means punitive or exemplary **Damages** or the multiple portions thereof, if insurable under the applicable law of the jurisdiction most favorable to the insurability of such **Damages** provided such jurisdiction is where:

   **1.** Those **Damages** were awarded or imposed; or

   **2.** Any **Wrongful Act** occurred for which such **Damages** were awarded or imposed;

**Damages** do not include any costs or expenses in complying with any demand for **Equitable Relief**, even if such compliance is compelled as a result of a judgment, award or settlement.

* * *

Section D. Definitions in the Hanover Policy is amended by the VSAE to include:

**ERP Triggering Event** means any of the following:

   1. **We** or the **Named Insured** cancel or nonrenew this **Policy**;…

7

Under the Virginia State Amendatory Endorsement, the definition of **Extended Reporting Period** is deleted and replaced by:

**Extended Reporting Period** means an extension of the time allowed for reporting **Claims**.

\* \* \*

**Named Insured** means the person or entity as shown in Item 1. of the Declarations page.

\* \* \*

**Policy** means this **Policy** form, the Declarations, and any endorsements to the **Policy** issued by **Us,** and **Your** application, including all supplements.

**Policy Period,** as shown on Item 2. of the Declarations page, means the period from the effective date of the **Policy** to the expiration date or earlier termination date of the **Policy**.

**Policy Termination Date** means the expiration date of the **Policy** as shown on the Declarations page or the cancellation date of the **Policy**.

\* \* \*

**Professional Services** means those services **You** are legally qualified to perform for others in **Your** capacity as an architect, engineer, land surveyor, landscape architect, construction manager, interior designer, scientist, technical consultant or as specifically defined by endorsement to the **Policy**.

\* \* \*

**Wrongful Act(s)** means any actual or alleged negligent act, error or omission or related **Wrongful Acts** which are causally connected by reason of any common fact, circumstance, situation, transction, casualty, event or decision including **Personal Injury** committed in the course of **Your Professional Services** for others by **You** or by any other entity for which **You** are legally liable on or before the **Policy Termination Date**.

\* \* \*

F.  **EXTENDED REPORTING PERIOD**

Under the Virginia State Amendatory Endorsement, the opening paragraphs and F.1. and F.2. of Extended Reporting Periods are deleted and replaced by:

8

The **Extended Reporting Period** options listed below do not extend the **Policy Period** or change the scope of the coverage provided. There are no separate, additional or reinstated limits of liability for any of the **Extended Reporting Period** options except as noted below. Once in effect, **We** will not cancel the **Extended Reporting Period** without the consent of the **Named Insured** except for nonpayment of premium or fraud.

\* \* \*

1. <u>Automatic Extended Reporting Period</u>

    If **We** cancel or elect to not renew this **Policy**, and **You** have not obtained other insurance for **Wrongful Acts** occurring prior to the effective date of such cancellation or nonrenewal, you will be entitled to an automatic **Extended Reporting Period** for no additional premium….

2. <u>Optional Extended Reporting Period</u>

    If an **ERP Triggering Event** occurs, **We** will provide an optional **Extended Reporting Period** to the **Named Insured**, as described below:

    a. The **Named Insured** shall have the right, upon payment of an additional premium, to an extension of the reporting period for any **Claim** made against **You** first made and reported after the effective date of the **ERP Triggering Event**, but only with respect to **Wrongful Acts** committed prior to the effective date of the **ERP Triggering Event** and otherwise covered by this **Policy**.

        1) The optional **Extended Reporting Period** and additional premium will be determined in accordance with the rules, rates and rating plans **WE** then have in effect in Virginia. Coverage under the optional **Extended Reporting Period** will apply for each **Insured** although he **Named Insured** shall have and exercise the sole right to purchase the optional **Extended Reporting Period**. **We** may offer the **Named Insured** various options in the event of an **ERP Triggering Event**, at least one option will include an **Extended Reporting Period** of one year for the remaining Limits of Liability of the **Policy** at the time of the inception of the **Extended Reporting Period**. Such offer will be sent no later than fifteen (15) days after the **ERP Triggering Event**.

9

\* \* \*

G.     **DUTIES IN THE EVENT OF CLAIM(S), POTENTIAL CLAIM(S), OR SUPPLEMENTAL COVERAGE MATTER(S)**

\* \* \*

2. **You** and any other involved **Insured** must:
   a. Immediately send **Us** copies of any demands, notices, summonses or legal papers received in connection with the **Claim**;

\* \* \*

H.     **CONDITIONS**

\* \* \*

8. <u>Sole Agent for the Insured</u>

   By accepting this **Policy, You** agree that only the **Named Insured** is authorized to act on behalf of all **Insureds** with respect to the following: consenting to settlement or releasing rights under this **Policy**, payment for premiums and deductibles, receiving return premiums, giving or receiving notice of cancellation or non-renewal, requesting any optional **Extended Reporting Period** and agreeing to any changes in this insurance **Policy**. Each **Insured** agrees that the **Named Insured** shall act on its or their behalf with respect to such matters.

\* \* \*

Under the Virginia State Amendatory Endorsement, Section H.1. is deleted and replaced in relevant part by the following:

1. <u>Cancellation, Non-Renewal and Renewal</u>

   a. The **Named Insured** may cancel this Policy by mailing or delivering to **Us**, advance notice of cancellation.

\* \* \*

   c. If **We** elect to nonrenew this **Policy**, **We** will provide written notice to the **Named Insured** at least fifteen (15) days before the expiration date of the **Policy Period** if nonrenewal is due to nonpayment of premium, or forty-five (45) days before the expiration date of the **Policy Period** if nonrenewal is for any other reason.

25. The Continental Policy provides in pertinent part:

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
INSURANCE POLICY

\* \* \*

The Insurer and the **Insured** agree as follows:

I. **COVERAGE**
    A. **INSURING AGREEMENTS**
        1. **Professional Liability**

           The Insurer will pay all amounts in excess of the deductible up to the limit of liability that the **Insured** becomes legally obligated to pay because of a **claim** as a result of a **wrongful act** in the performance of **professional services**, provided that:

\* \* \*

        b. such **claim** is first made against the **Insured** during the **policy year** and reported to the Insurer in accordance with section **VI, CONDITIONS**, paragraph **B.**, the **Insured's** Duties if There is a **Claim**. Except as set forth in the section **VI, CONDITIONS**, paragraph **C.**, The **Insured's** Rights and Duties In the Event of a **Circumstance**, a **claim** is considered first made on the earlier of the **Insured's** receipt of the **claim** or the Insurer's receipt of notice of the **claim**.

\* \* \*

III. **DEFINITIONS**

\* \* \*

**Claim** means a demand for money or services, naming the **Insured** and alleging a **wrongful act** or **pollution incident**.

\* \* \*

**Insured** means the **Named Insured**, a **newly acquired subsidiary** and:

11

    **1.**    any person who is or becomes a partner, officer, director, member, stockholder or employee of the **Named Insured** or **newly acquired subsidiary** during the **policy term**, but only while acting within the scope of their duties for the **Named Insured** or **newly acquired subsidiary**.

* * *

**Professional services** mean those services that the **Insured**, or any person or entity, including joint ventures, for whom the **Insured** is liable, performs for others on behalf of a **Named Insured** in the **Insured's** practice as an architect, engineer, interior designer, land surveyor, LEED® green building program consultant, landscape architect, construction manager, scientist, or technical consultant.

**Wrongful act** means an act, error or omission that causes liability in the performance of a **professional services** for others by the **Insured** or by any person or entity, including joint ventures, for which the **Insured** is liable.

**HANOVER'S FAILURE TO OFFER A RENEWAL FOR
THE 2022-2023 POLICY YEAR**

26. In the months leading up to the expiration date of the Hanover Policy, H&P worked with W.D. Campbell and Son, Incorporated ("Campbell Insurance") in Lynchburg, Virginia to obtain quotes from various insurers, including Hanover and Continental, for its professional liability coverage for the 2022-2023 policy term. Hanover had issued consecutive professional liability policies to H&P since January 1, 2018.

27. On October 26, 2021, Hanover rejected H&P's initial application for coverage for the 2022-2023 policy term. The reason given for the rejection was that the application was not provided on Hanover's form. By email dated October 26, 2021, Hanover provided Campbell Insurance with a copy of the required application to be completed by H&P.

28. That same day (October 26, 2021), Hanover issued a "Conditional Renewal Notice." A copy of the Conditional Renewal Notice is attached hereto as Exhibit I. The Conditional Renewal Notice stated "This notice is to advise that we are agreeable to renewing

12

this policy subject to the following: Due to claim history the premium, deductible, terms and/or conditions are subject to change."

29. The Conditional Renewal Notice does not advise H&P of any change in premium, deductible, terms and/or conditions. Even more, although the "Conditional Renewal Notice" indicates that the premium, deductible, terms and/or conditions are subject to change," the notice does not advise H&P what "conditions" it had to meet in order to receive an offer of renewal.

30. On November 17, 2021, Campbell Insurance sent the requested application to Hanover.

31. Neither Campbell Insurance, nor H&P heard anything at all from Hanover until after the close of business on December 20, 2021. Even this communication was not an offer of renewal. Instead, underwriter Lonette Pearson sent an email advising "working on this renewal and will need to refer to sr. mgmt. as both the limit and size of the firm are over my authority. Last year they asked about the Geotech/soil services in Question 14 so I thought I'd get a jump on that and have the answer in hand for their review. Please have the insured advise if they subcontract out the full 10%. It doesn't show they are subbed in Question 16a, only says etc. so I want to confirm that the professional services sublet include geo/soils as on previous applications."

32. By email dated December 21, 2021, Campbell Insurance advised Ms. Pearson that H&P had determined to place the coverage elsewhere.

33. At no time did H&P, the Named Insured under the Hanover Policy, advise Hanover in writing that it wished to nonrenew the Hanover Policy.

34. After it rejected H&P's initial application, at no time did Hanover advise H&P what "conditions" it needed to meet in order to receive an offer of renewal.

35. After it rejected H&P's initial application, at no time did Hanover make an offer of renewal for the 2022 policy term beginning on January 1, 2022.

36. Hanover's initial rejection of H&P's renewal application and its failure to advise H&P of any conditions that needed to be met in order to receive an offer of renewal amount to actual or constructive nonrenewal of the Hanover Policy by Hanover.

37. Hanover's initial rejection of H&P's renewal application and its failure to respond to the November 17, 2021 application or provide the terms of any renewal offer within a reasonable time amount to actual or constructive nonrenewal of the Hanover Policy by Hanover.

38. Hanover's initial rejection of H&P's renewal application and its failure to ever provide the terms of any renewal offer amount to actual or constructive nonrenewal of the Hanover Policy by Hanover.

## COUNT I – BREACH OF CONTRACT - HANOVER

39. Hurt & Proffitt re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 38 above.

40. The Claim and the Underlying Action allege that H&P is legally obligated to pay the Town of Pearisburg damages in the amounts alleged because of a claim made against H&P arising from a wrongful act in the rendering or failure to render your professional services as required by the insuring agreement in the Hanover Policy.

41. H&P has met all other terms, conditions and requirements of the Hanover Policy and the Claim asserted in the Underlying Action is not excluded from coverage under the Policy.

42. Because Hanover rejected H&P's application and failed to offer a renewal of the Hanover Policy that included the terms and/or conditions of the offer, the Automatic Extended Reporting Period in the Hanover Policy applies. Thus, to the extent the administrative employee

14

signing for The Letter on December 29, 2021 constitutes a claim "made" on that date under the terms of the Hanover Policy, the claim was received during the Policy Period and reported during the Automatic Extended Reporting Period. As such, the Claim and the subsequently filed Underlying Action are covered under the Hanover Policy.

43. Hanover has breached its obligation to H&P by refusing to provide a defense in the Underlying Action and by denying coverage for the Claim and the Underlying Action.

44. All obligations under the Hanover Policy have been satisfied by H&P, including the payment of premiums and provision of timely notice of claims, or they have been waived, released or are the subject of an estoppel.

45. Hanover has refused to accept coverage for the Claim and the Underlying Action—both a defense and indemnification—without any reasonable basis and while not acting in good faith.

46. As a direct, proximate and foreseeable result of Hanover's refusal to fulfill its coverage obligations to H&P, H&P has incurred direct damages and will continue to incur substantial fees, costs, and expenses.

47. As a result of the aforementioned breaches, Hanover is liable to H&P for money damages (including, but not limited to, costs expended in defense of the Underlying Action) costs and interest, and all damages allowable pursuant to Va. Code Ann. 38.2-209.

### COUNT II – BREACH OF CONTRACT – CONTINENTAL

48. Hurt & Proffitt re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 47 above and brings this Count in the alternative to Count I.

49. The Claim and the Underlying Action allege that H&P is legally obligated to pay the Town of Pearisburg damages in the amounts alleged because of a claim as a result of a

wrongful act in the performance of professional services as required by the insuring agreement in the Continental Policy.

50. H&P has met all other terms, conditions and requirements of the Hanover Policy and the Claim asserted in the Underlying Action is not excluded from coverage under the Policy.

51. To the extent Dennis Amos' receipt of and opening of The Letter on January 3, 2022 constitutes the H&P's receipt of the Claim on that date under the Continental Policy, the Claim was first made and reported during the Policy Year. As such, the Claim and the subsequently filed Underlying Action are covered under the Continental Policy.

52. Continental has breached its obligation to H&P by refusing to provide a defense in the Underlying Action and by denying coverage for the Claim and the Underlying Action.

53. All obligations under the Continental Policy have been satisfied by H&P, including the payment of premiums and provision of timely notice of claims, or they have been waived, released or are the subject of an estoppel.

54. Continental has refused to accept coverage for the Claim and the Underlying Action—both a defense and indemnification—without any reasonable basis and while not acting in good faith.

55. As a direct, proximate and foreseeable result of Continental's refusal to fulfill its coverage obligations to H&P, H&P has incurred direct damages and will continue to incur substantial fees, costs, and expenses.

56. As a result of the aforementioned breaches, Continental is liable to H&P for money damages (including, but not limited to, costs expended in defense of the Underlying Action), consequential damages, attorneys' fees, costs and interest and all damages allowable pursuant to Va. Code Ann. 38.2-209.

**COUNT III - DECLARATORY RELIEF HANOVER AND CONTINENTAL**

57.     Hurt & Proffitt re-alleges and reincorporates herein by reference the allegations set forth in paragraphs 1 through 56 above.

58.     An actual controversy exists between H&P and Hanover and Continental regarding whether Hanover and Continental have a duty to provide H&P with coverage under the Hanover and/or the Continental Policies—both a defense and indemnity—in the Underlying Action.

59.     The Claim and the Underlying Action allege that H&P is legally obligated to pay the Town of Pearisburg damages in the amounts alleged because of a claim made against H&P arising from a wrongful act in the rendering or failure to render your professional services as required by the insuring agreement in the Hanover Policy.

60.     The Claim and the Underlying Action allege that H&P is legally obligated to pay the Town of Pearisburg damages in the amounts alleged because of a claim as a result of a wrongful act in the performance of professional services as required by the insuring agreement in the Continental Policy.

61.     H&P has met all other terms, conditions and requirements of the Hanover and Continental Policies and the Claim asserted in the Underlying Action is not excluded from coverage under the Policies.

62.     Because Hanover rejected H&P's application and failed to offer a renewal of the Hanover Policy that included the terms and/or conditions of the offer, the Automatic Extended Reporting Period in the Hanover Policy applies.  Thus, to the extent the administrative employee signing for The Letter on December 29, 2021 constitutes a claim "made" on that date under the terms of the Hanover Policy, the claim was received during the Policy Period and reported

during the Automatic Extended Reporting Period. As such, the Claim and the subsequently filed Underlying Action are covered under the Hanover Policy. In this instance, H&P requests that this Court declare the rights and duties of the parties and declare that the Hanover Policy provides coverage—both a defense and indemnification—for the Claim and the Underlying Action.

63. In the alternative, to the extent Dennis Amos' receipt of and opening of The Letter on January 3, 2022 constitutes H&P's receipt of the Claim on that date under the Continental Policy, the Claim was first made and reported during the Policy Year. As such, the Claim and the subsequently filed Underlying Action are covered under the Continental Policy. In this instance, H&P requests that this Court declare the rights and duties of the parties and declare that the Continental Policy provides coverage—both a defense and indemnification—for the Claim and the Underlying Action.

WHEREFORE, Plaintiff Hurt & Proffitt, Inc., respectfully prays for an order:

a. Granting judgment in its favor against The Hanover Insurance Company as to Count I above and awarding the damages sought therein and the relief alleged, including all damages allowable pursuant to Va. Code Ann. 38.2-209.

b. Alternatively, granting judgment in its favor against Continental Casualty Company as to Count II above and awarding the damages sought therein and the relief alleged, including all damages allowable pursuant to Va. Code Ann. 38.2-209.

c. Declaring the rights and duties of the parties and declaring that the Hanover Policy provides coverage—both a defense and indemnification—for the Claim and the Underlying Action; or, in the alternative that that this Court declare the rights and duties of the

parties and declare that the Continental Policy provides coverage—both a defense and indemnification—for the Claim and the Underlying Action..

        d.      That this Court grant such other relief as may be warranted, just, necessary and proper under the circumstances.

Dated:   September 30, 2022          Respectfully submitted,

                                                    HURT & PROFFITT, INC.

                                                    By Counsel

s/Elizabeth S. Skilling  
Elizabeth S. Skilling  
VSB No. 28063  
Robert F. Freidman  
VSB No. 82118  
Counsel for Hurt & Proffitt, Inc.  
Harman, Claytor, Corrigan & Wellman  
P.O. Box 70280  
Richmond, Virginia 23255  
(804) 747-5200  
(804) 747-6085 – facsimile  
eskilling@hccw.com  
rfriedman@hccw.com